**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PRAKASH NAIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 3500 |
| | ) | |
| BOEHRINGER-INGELHEIM | ) | Judge Nan R. Nolan |
| PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Prakash Naik has filed suit alleging that Defendant Boehringer-Ingelheim Pharmaceuticals, Inc. ("BIPI") wrongfully terminated his employment on August 5, 2005 based on his age and nationality in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Currently before the court is Plaintiff's Combined Motion to Compel Discovery. For the reasons set forth here, the motion is denied.

## BACKGROUND

On December 11, 2007, BIPI submitted its responses to Plaintiff's first set of written discovery requests, including production of some 2,300 pages of documents. Several months later on May 8, 2008, BIPI discovered that it had inadvertently produced three privileged documents Bates stamped D000000128, D000000129 and D000000136. Document 136, the only one at issue here, consists of four email messages dated August 3 through 5, 2005 between Glen Englram, BIPI's Human Resources Business Partner; William Somers, BIPI's former Regional Director; and Alessandra Hawthorne, BIPI's corporate counsel. The emails relate to a draft letter regarding Plaintiff's possible termination, the contents of which had been discussed during an earlier conference call. (Def. Resp., at 3, 4.) BIPI also asserts a privilege over the draft letter, which was not inadvertently produced.

Upon discovering the production of privileged documents, BIPI's counsel promptly called Plaintiff's counsel on May 8, 2008, and again the next day,[1] to assert the privilege. Nevertheless, on May 9, 2008, Plaintiff's counsel attempted to use Document 136 at the deposition of Mr. Englram. When BIPI's counsel objected, Plaintiff's counsel agreed to refrain from pursuing questions relating to the document at that time, but reserved the right to challenge the claim of privilege. Three days later, BIPI's counsel sent Plaintiff's counsel an email message formally challenging the privilege as to Document 136 and advising that Plaintiff intended to use the document at the deposition of Mr. Somers the following day. During that deposition, BIPI's counsel again raised a privilege objection, and the parties agreed to leave Mr. Somers's deposition open as to questions relating to Document 136 pending resolution of the matter.

On May 13, 2008, presumably after Mr. Somers's deposition had concluded for the day, BIPI's counsel sent Plaintiff's counsel a Privilege Log generally asserting the attorney-client and/or work product privileges over several documents, including Document 136. (Ex. D to Pl. Mot.) Plaintiff now objects that Document 136 is not in fact privileged, and that BIPI has waived any privilege by submitting an inadequate privilege log and by producing the document during discovery.

**DISCUSSION**

**A.     Privilege**

Plaintiff first argues that he should be allowed to use Document 136 in this case because it is not protected by any privilege.[2] The Seventh Circuit test to determine attorney-client privilege

---

[1] Plaintiff denies that BIPI's counsel contacted his attorneys on May 9, 2008. (Pl. Reply, at 3.)

[2] As explained below, BIPI's privilege log has several defects, which created confusion as to the exact nature of the privilege being asserted over Document 136. To the extent BIPI has now clarified that it is only asserting the attorney-client privilege, the court need not address Plaintiff's arguments relating to the work product doctrine. (Def. Resp., at 1; Pl. Mot. ¶¶ 14-19.)

2

is: (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). The purpose of the privilege is to "encourage full disclosure and to facilitate open communication between attorneys and their clients." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007) (quoting *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003)). In addition to protecting statements made by the client, the privilege also protects statements from the lawyer to the client "where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client." *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) (internal citations omitted).

As noted, Document 136 consists of a series of four email messages sent between August 3 and 5, 2005. Two of those messages are between Mr. Englram and Mr. Somers, and are not privileged. It is undisputed that the third and fourth messages are communications between BIPI and its corporate counsel, Alessandra Hawthorne. An *in camera* review of the August 4, 2005 message from Ms. Hawthorne to Mr. Englram reveals that it cannot be construed as a communication regarding legal advice and, thus, is not privileged.

BIPI claims that the remaining August 3, 2005 message from Mr. Englram to Ms. Hawthorne is privileged because "it reflect[s] communications between Englram . . . and one of BIPI's corporate counsel, requesting legal advice and guidance about the possible termination of Plaintiff's employment for violating Company policy." (Def. Resp., at 3.) BIPI also asserts the attorney-client privilege over the draft letter attached to Document 136 because "this document was sent to Ms. Hawthorne by Mr. Englram for her legal advice following a conversation between Mr. Englram, Ms. Hawthorne and . . . [Mr.] Somers, in which they discussed the document's general contents." (*Id.*) The court is satisfied, based on an *in camera* review of the documents, that BIPI was seeking legal

3

advice from Ms. Hawthorne regarding Plaintiff's possible termination. Thus, the fourth email message and the draft letter are both privileged.

Plaintiff disagrees, citing *Neuder v. Battelle Pacific Northwest Nat'l Lab.*, 194 F.R.D. 289 (D.D.C. 2000) for the proposition that "[w]hen a committee inquires about the legal implications of a proposed decision to terminate an employee, the business purpose of the decision predominates over the legal issues discussed." *Id.* at 293 (citing *Marten v. Yellow Freight Sys., Inc.*, No. Civ. A. 96-2013-GTV, 1998 WL 13244, at *8 (D. Kan. Jan. 6, 1998)). In this case, however, there is no suggestion that BIPI's in-house counsel was serving on a committee charged with considering employment issues. *Id.* at 294 (noting that the in-house attorney was a member of the company's Personnel Action Review Committee). Moreover, there is no evidence that Ms. Hawthorne was acting as anything other than a legal adviser when she consulted with BIPI about Plaintiff's possible termination. *Id.* at 294 (finding that in-house counsel, as a member of the Personnel Action Review Committee, "acted predominantly in a non-legal capacity.")

Plaintiff also stresses that "[m]emoranda describing meetings are generally not privileged." *American Motors Corp. v. Great American Surplus Lines Ins. Co.*, No. 87 C 2496, 1988 WL 2788, at *3 (N.D. Ill. Jan. 8, 1988). Contrary to Plaintiff's suggestion, however, the draft letter in this case is not akin to "some notes taken in regards to a conference that dealt with the termination of the Plaintiff." (Pl. Mot. ¶ 11.) Rather, it is a draft document reflecting legal advice obtained during a conference with in-house counsel. Equally unpersuasive is Plaintiff's argument that "no privilege attaches to documents prepared before the threat of a discharge lawsuit." (Pl. Reply, at 8 (citing *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.*, No. 95 C 673, 1996 WL 514993 (N.D. Ill. Sept. 6, 1996).) The court in *Heidelberg Harris* was addressing (1) one document allegedly protected by the work product privilege, as opposed to the attorney-client privilege at issue here; and (2) a second document described only as "neither an attorney-client communication nor discussion of any attorney's opinion." *Heidelberg Harris*, 1996 WL 514993, at *4, 5. Document 136

4

and the draft letter are both attorney-client communications and are protected by the attorney-client privilege.

**B.     Waiver**

Plaintiff argues that Document 136 is nonetheless fair game because BIPI waived its privilege by producing an inadequate privilege log and by disclosing the document during discovery. The court addresses each argument in turn.

**1.     Privilege Log**

Plaintiff objects that BIPI's privilege log fails to explain the basis for asserting privilege over Document 136, and was not timely produced. "An attorney asserting privilege must timely support that claim with a 'privilege log' which describes the nature of each document being withheld." *Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006). "A claim of privilege cannot be a blanket claim, but must be made and established on a document-by-document basis." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 86 (N.D. Ill. 1992). *See also Coltec Indus., Inc. v. American Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000). To that end, a privilege log must identify the following information for each separate document: the date; the author and recipients, including their capacities; the subject matter of the document; the purpose for its production; and a specific explanation of why it is privileged. *Id.* at 88. The log "must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing the[se] requirements." *Id. See also In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 244 F.R.D. 434, 438 (N.D. Ill. 2007) (quoting *FMC Corp. v. Trimac Bulk Transp. Servs., Inc.*, No. 98 C 5894, 2000 WL 1745179, at *1 (N.D. Ill. Nov. 27, 2000) ("The purpose of a privilege log is to enable the opposing party and the Court to evaluate the applicability of the asserted privilege."))

The court agrees that BIPI's privilege log suffers from several defects. First, the log does not identify the privilege(s) being asserted for each specific document. Rather, BIPI merely states

5

that all of the listed documents are protected by the attorney-client and/or work product privileges. It is now evident, however, that BIPI is not in fact claiming both privileges as to all documents; in response to Plaintiff's motion to compel, for example, BIPI now states that Document 136 is protected only by the attorney-client privilege. Thus, the log does not adequately explain why each individual document is privileged. In addition, the privilege log does not set forth the capacities of each recipient of the listed documents. Finally, BIPI failed to provide the privilege log until some five months after it first produced documents in December 2007.

Despite these deficiencies, the court declines to find that BIPI has waived its privilege on this basis. "[B]lanket waiver is not a favored remedy for technical inadequacies in a privilege log." *Muro v. Target Corp.*, No. 04 C 6267, 2007 WL 3254463, at *9 (N.D. Ill. Nov. 2, 2007) (citing *American Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005)). "An order that privileged documents be disclosed as a sanction is appropriate . . . only if the party that authored the log has displayed willfulness, bad faith or fault." *Id.* at *15. Here, there is no showing that BIPI acted in bad faith by failing to include all of the required information in its privilege log. BIPI has now clarified that it is asserting only the attorney-client privilege over Document 136, which is the sole document at issue in Plaintiff's motion. In addition, BIPI has identified Ms. Hawthorne's capacity as an attorney for purposes of Document 136, albeit in a separate log entry.

As for the timeliness issue, BIPI provided a privilege log within 5 days of discovering the inadvertent production of Documents 128, 129 and 136, and asserted the privilege when Plaintiff tried to use Document 136 at depositions. *Cf. Wunderlich-Malec Sys., Inc. v. Eisenmann Corp.*, No. 05 C 4343, 2006 WL 3370700, at *8 (N.D. Ill. Nov. 17, 2006) (defendant waived privilege where it did not provide a privilege log until nearly three months after discovering that it had mistakenly produced two privileged binders).

Plaintiff objects that he would never have known about the draft letter were it not for the fact that it is referenced in Document 136, and argues that *Ritacca v. Abbott Labs.*, 203 F.R.D. 332 (N.D. Ill. 2001) mandates a finding of waiver. (Pl. Reply, at 6-7.) The court disagrees. In *Ritacca*, the plaintiff "aggressively pursued [the defendant] for the documents at issue" for approximately four months, including filing a motion to compel that "led to . . . several court appearances, not to mention numerous meetings and telephone conferences out of court." 203 F.R.D. at 335. At no point during that time did the defendant suggest the documents were privileged. In addition, the court found that the defendant had "hand-picked the disputed documents from its collection and set them aside," as evidenced by a gap in the Bates numbers series among the documents produced. *Id*. Indeed, "the documents at issue only came to [the plaintiff's] attention because [the plaintiff] noticed that Bates numbers were missing." *Id*. "[M]ost telling" to the court was the fact that the plaintiff had listed each missing document by Bates number in his motion to compel, but the defendant failed to review the list and respond to it for nearly four months. *Id*. at 336. The court also noted that the defendant misrepresented that the documents at issue were duplicates rather than attorney-client communications, "giv[ing] the appearance of a stalling tactic, a measure undertaken to hide information from [the plaintiff] as long as possible." *Id*.

In this case, there have been no lengthy court appearances, meetings, or telephone conferences regarding Document 136. Unlike the defendant in *Ritacca*, moreover, BIPI immediately asserted a privilege upon discovering the inadvertent production and, within five days, produced a privilege log that included the draft letter. There is no evidence that BIPI hand-picked documents to withhold, or deliberately attempted to hide information from Plaintiff. Under these circumstances, the court declines to find that BIPI waived its privilege as to Document 136 based on the privilege log.

BIPI, however, is ordered to submit a revised privilege log consistent with this opinion and the requirements of *Allendale Mutual Insurance Company*, 145 F.R.D. at 86.

### 2. Inadvertent Production

In a final effort to defeat BIPI's claim of privilege over Document 136, Plaintiff argues that BIPI has waived the privilege by producing the document in December 2007. BIPI insists that the disclosure was inadvertent and did not operate as a waiver. "[T]he party claiming an inadvertent disclosure has the burden of proving that the disclosure truly was inadvertent." *Wunderlich-Malec Sys., Inc. v. Eisenmann Corp.*, No. 05 C 4343, 2007 WL 3086006, at *3 (N.D. Ill. Oct. 18, 2007) (citing *Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 116 (N.D. Ill. 1996)). "Courts have not established a bright-line rule for determining whether a document was inadvertently produced; instead, courts look at the circumstances surrounding the disclosure." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, __ F.3d __, 2008 WL 2246431, at *11 (7th Cir. June 3, 2008) (quoting *Harmony Gold*, 169 F.R.D. at 116). Relevant factors include the total number of documents reviewed, the procedures used to review the documents before they were produced, and the actions of the producing party after discovering that the documents had been produced. *Wunderlich-Malec Sys.*, 2007 WL 3086006, at *3.

In this case, BIPI produced over 2,300 pages of documents and claims to have inadvertently disclosed only three pages. (Def. Resp., at 6.) This supports a finding of inadvertence. *Wunderlich-Malec Sys.*, 2007 WL 3086006, at *3 ("Clearly, the greater the ratio is between privileged documents and total documents produced, the more persuasive claims of inadvertent production become.") Once BIPI discovered the production, moreover, it immediately contacted Plaintiff's counsel and asserted its privilege. BIPI reasserted the privilege at two depositions, and produced a privilege log within five days. *See id.* (prompt response to recover document "evinc[ed] a genuine desire to correct [the] mistake and len[t] credence to [the] claim of inadvertence.")

BIPI has not described the procedures it used to review documents prior to production, or even stated that it conducted any such review. This factor weighs against a finding of inadvertent disclosure. Nevertheless, viewing the totality of the circumstances, including the small number of

8

privileged documents produced, BIPI's prompt action to recover them, and the fact that BIPI has now provided a privilege log, the court is satisfied that the disclosure of Document 136 was in fact inadvertent.  *See In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1995 WL 683777, at *3 (N.D. Ill. Nov. 16, 1995) ("A truly inadvertent disclosure is 'accidental,' . . . and is 'not the product of some conscious but erroneous decision.'") (internal citations omitted).

This, however, does not end the inquiry.  When a document is produced inadvertently, courts must balance five factors to determine whether waiver has occurred: (1) the reasonableness of the precautions taken to protect the document; (2) the time taken to rectify the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness.  *Judson Atkinson Candies*, __ F.3d at __, 2008 WL 2246431, at *11.  *See also Urban Outfitters, Inc. v. DPIC Companies, Inc.*, 203 F.R.D. 376, 380 (N.D. Ill. 2001).  The first four factors mirror those already discussed above, with factor one weighing in favor of waiver but factors two through four weighing against it.

Plaintiff emphasizes the fifth factor, arguing that he "substantially formulated depositions based on the disclosed materials," and objecting that BIPI never disclosed the existence of the draft termination letter prior to submitting the privilege log.  (Pl. Mot. ¶ 11.)  The court allows that Plaintiff experienced some inconvenience here.  Nevertheless, Plaintiff has not demonstrated that he has suffered, or will suffer, substantial prejudice unless he is allowed to use Document 136.  Notably, Plaintiff does not argue that he was unable to question deponents regarding any matters other than Document 136 and the draft letter.  In these circumstances, fairness dictates that BIPI's privilege should remain.  *See Advertising to Women, Inc. v. Gianni Versace S.p.A.*, No. 98 C 1553, 1999 WL 608711, at *5 (N.D. Ill. Aug. 4, 1999) ("Fairness is an 'overriding issue' in the advertent production analysis.")

The court understands that Plaintiff has returned "all remaining copies [of Document 136] in Plaintiff's possession." (Pl. Reply, at 5.) BIPI is thus ordered to produce a redacted version of Document 136 consistent with this opinion.

**CONCLUSION**

For the reasons stated above, Plaintiff's Combined Motion to Compel Discovery [Doc. 31] is denied. Defendant must produce a revised privilege log and a redacted version of Document 136 consistent with this opinion by June 26, 2008.

ENTER:

Dated: June 19, 2008

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge