IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PRAKASH NAIK, )
 )
           Plaintiff, )
 ) No. 07 C 3500
    v. )
 ) Judge Wayne R. Andersen
BOEHRINGER INGELHEIM, )
PHARMACEUTICALS, INC., )
 )
           Defendant. )

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the motion of defendant, Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"), for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff Prakash Naik ("Naik") filed a complaint against his employer, BIPI, alleging discrimination on the basis of age and national origin, in violation of the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). For the reasons stated below, the motion is granted.

## BACKGROUND

Naik became acquainted with BIPI, a specialty pharmaceutical and healthcare company, while working for Ventiv, an agency that contracted Naik out to BIPI. Def.'s Statement of Undisputed Material Facts (hereinafter, "DSF") ¶ 16. Naik's job under the contract was to sell BIPI's products in the Schaumburg Territory under the supervision of Brett Lundsten ("Lundsten"). *Id.* On January 1, 2004, Naik was hired directly by BIPI as a Professional Sales Representative ("PSR") in the Schaumburg Territory, under Lundsten's supervision. *Id.* at ¶ 4.

According to Naik, "everyone" on the Schaumburg team was stressed because Lundsten was hard on every member of the team and critical of each PSR's performance. *Id.* at ¶ 57. Naik contends that Lundsten frequently commented on his performance with reference to Naik's "30 years of experience." Pl.'s Statement of Additional Facts (hereinafter, "PSF") ¶ 16-17. Naik also claims that Lundsten once asked how old his, Naik's, wife was, and sent a birthday card with the inscription, "You're How Old?!" inside. *Id.* at ¶¶ 15, 18. In March 2005, Lundsten questioned Naik about his experience as a sales representative in India. *Id.* at ¶ 64. Naik complained in writing to Bill Somers ("Somers") regarding his difficulties with Lundsten and the alleged inappropriate comments. *Id.* at ¶ 19. Naik also complained about his annual review with Lundsten, which took over seven hours to finalize. DSF ¶ 66. Naik further voiced his concerns about Lundsten to Bee Smith, Regional Operations Coordinator, indicating that several people were having problems with Lunsten. PSF ¶ 21.

At a sales meeting during the first half of 2005, Somers, then Regional Manager for the Chicago region, advised all District Managers that the region was underperforming and instructed them to review their territories to identify the cause of the poor performance. DSF ¶ 17. After reviewing his territory's sales numbers, Lundsten, then District Manager for the Rockford district, found that the Schaumburg territory was not meeting its goals and decided to investigate by reviewing each individual member's call report activity. *Id.* at ¶¶ 18-19, 23-25. During this individual review, Lundsten noticed several anomalous entries in Naik's daily call reporting, including sales numbers that did not reflect an increase of reported sales calls, "late starts" (first sales activity beginning after Naik was expected to be in his territory), and anomalous synchronization times (Naik synchronized his computer with BIPI's network at times

when he should have been in the field). *Id.* at ¶¶ 32-35. Lundsten further found that Naik had reported face-to-face calls with physicians on days that, according to records of the District's sales history, those physicians were not available. *Id.* at ¶ 34.

Lunsten showed his findings to his supervisor, Somers, and they met with Glen Englram ("Englram"), Human Resources Business Partner for the Region, to discuss their concerns. *Id.* at ¶ 36. Englram instructed Lundsten to contact the physicians' offices where he suspected falsified calls and verify whether the physician was in the office, seeing patients and meeting with sales representatives, on the dates in question. *Id.* at ¶ 37. After contacting several offices and speaking with an administrative assistant, front desk receptionist, office manager, or nurse in each office, Lundsten compiled a list of seven instances when Naik reported a face-to-face call with a physician and the office staff confirmed that the physician was not in the office. *Id.* at ¶¶ 38-39. Lundsten did not speak with any physician directly. *Id.* at 38. Lundsten admits that it is common practice and part of a PSR's job to meet with physicians outside of their office and for lunch. PSF ¶ 35. Lundsten again met with Englram and Somers to relay his findings and they decided to meet with Naik to discuss the reporting anomalies. DSF ¶ 46.

On August 2, 2005, Lundsten, Somers and Englram met with Naik to discuss the face-to-face call discrepancies. *Id.* at ¶ 47-48. Naik stated that he could not remember the dates in question, but that he might have information in a personal diary or record at his home which might solve the issue. *Id.* at ¶ 49. However, Naik did not provide any samples to the physicians at the face-to-face calls in question, and, therefore, did not have any further documentation to provide to BIPI. *Id.*

3

After the August 2nd meeting, Lundsten followed up with Naik and requested that he supply any additional information by the end of the day on August 3, 2005. *Id.* at ¶ 50. In response, Naik asked to be provided with a list of the specific issues discussed during the meeting. *Id.* at ¶ 51. Lundsten responded with five doctors and the particular dates on which he alleged Naik falsified face-to-face calls. *Id*. On August 4, Naik sent Lundsten an email stating that he had no further information. *Id.* at ¶ 52. Lundsten, Somers and Englram concluded that Naik had indeed falsified the calls in violation of company policy. *Id.* at ¶ 53. As a result, Somers and Englram decided to terminate Naik's employment and they, along with Lundsten, met with Naik on August 5 to inform him of the decision. *Id.* at ¶¶ 53-54. On October 31, 2005, BIPI hired Anthony Riper, a 26-year-old, non-Indian, to replace Naik. *Id.* at ¶ 56.

Between 2003 and 2005, BIPI fired two PSRs in the Chicago Region for falsifying call records and two other PSRs resigned from their employment in lieu of being fired for falsifying call reports. *Id.* at ¶¶ 68, 75. BIPI is not aware of any PSR in the Chicago Region who engaged in falsification of call reporting and was not fired. *Id.* at ¶ 80.

## DISCUSSION

**A.   Summary Judgment Standard**

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Further, the entry of summary judgment is proper against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v.*

4

*Catrett*, 477 U.S. 317, 322 (1986). When the non-moving party bears the burden of proof on a dispositive issue, that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In determining whether there exists a genuine issue of material fact, the court must view the record and draw all inferences in favor of the non-moving party. *Beard v. Whitley County REMC*, 840 F.2d 405, 409 (7th Cir. 1988). The court must "consider both the substantive law of employment discrimination and the burdens of proof applicable under the law." *Williams v. Williams Electronics*, 856 F.2d 920, 922 (7th Cir. 1988).

B.     **National Origin and Age Discrimination**

Under Title VII, it is unlawful for an employer to "discharge any individual… because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). Despite the different statutory basis for Naik's claims of national origin and age discrimination, the same analysis is applied to evaluate both. *Cerutti v. BASF Corp.*, 349 F.3d 1055, FN 4 (7th Cir. 2003) ("We employ essentially the same analytical framework to employment discrimination cases whether they are brought under the ADEA, Title VII or § 1981.") (citing *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000); *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999)).

To survive a motion for summary judgment, a plaintiff must provide either direct or indirect evidence of discriminatory intent. *La Montagne v. Am. Convenience Prods.*, 750 F.2d 1405, 1409 (7th Cir. 1984). Under the direct method, the plaintiff must present enough

5

evidence, either direct or circumstantial, to create a genuine issue. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). However, such direct evidence is rarely found because it "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Id.* Naik does not attempt to prove discrimination by direct evidence. Alternatively, a plaintiff may proceed under the indirect, burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this approach, a plaintiff must first establish a *prima facie* case of discrimination by showing that: (1) he is a member of the protected class; (2) he was performing well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees, not in his protected class, were treated more favorably. *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1030 (7th Cir. 2003). The Seventh Circuit has stated that, under some circumstances, a plaintiff may establish the fourth element of this framework by showing that "the employer needs to find another person to perform that job after the employee is gone . . . ." *Peirick v. Ind. Univ.-Perdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, FN2 (7th Cir. 2007) (quoting *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 846 (7th Cir. 2007)). Once a plaintiff establishes the four elements, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Hildebrandt*, 347 F.3d at 1030. If satisfied, the burden again shifts to the plaintiff to demonstrate that the proffered reason is pretextual. *Id.*

In this case, Naik has failed to make out a *prima facie* case of discrimination. Further, BIPI has articulated a legitimate, nondiscriminatory reason for the adverse employment action, and Naik is unable to show this reason to be pretextual.

### 1. Naik fails to prove his *prima facie* case of discrimination

The parties do not dispute that Naik is a member of a protected class or that he suffered an adverse employment action. However, Naik's *prima facie* case fails because he neither (a) presented sufficient evidence to demonstrate that he met BIPI's legitimate expectations nor (b) showed that similarly situated employees, not in his protected class, were treated more favorably.

#### a. Naik did not meet BIPI's legitimate expectations

To establish the second prong of his *prima facie* case, Naik must show that he was performing his job well enough to meet BIPI's legitimate expectations. *Id.* Further, the fact that Naik may have met BIPI's legitimate expectations in the past is irrelevant to whether he was meeting expectations at the time of the termination of his employment. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004).

BIPI policy expressly prohibits falsification of records, including falsification of call reports. In early 2005, Somers instructed all District Managers, including Lundsten, to review their territories to identify the cause of poor sales performance. In conducting this review, Lundsten noticed questionable call activity reported by Naik. Lundsten found several instances when Naik reported face-to-face sales calls on dates that Lundsten believed the physicians were not scheduled to be in their offices. After reporting this information to his supervisor, Somers, Lunsten was instructed to contact the physicians' offices to verify if each physician was in the office, seeing patients and sale representatives on the dates in question. Lunsten did as instructed, and, after confirming that several physicians were not in their offices on the days in question, confronted Naik as to the discrepancies in his reporting. Naik was unable to explain or

present any evidence to contradict the alleged false reporting, leading BIPI to conclude that Naik was not meeting its legitimate expectation of honest and accurate reporting.

In an attempt to establish that he was meeting BIPI's legitimate expectations, Naik produced significant evidence that he was performing his job satisfactorily up through January 2005. However, this evidence does not preclude an assertion that at the time of the adverse employment action, six months later, he was no longer performing his job up to BIPI's legitimate expectations. Further, meeting BIPI's expectations in regard to sales performance is independent and unrelated to the claim that Naik falsified call reports, and is insufficient to discredit BIPI's claim that it believed that Naik was not meeting its expectations. Therefore, Naik fails to satisfy the second prong of his *prima facie* case.

### b. Similarly situated employees were not treated more favorably

To establish the fourth prong of his *prima facie* case, Naik must show that similarly situated employees, not in his protected class, were treated more favorably. *Hildebrandt*, 347 F.3d at 1030. A similarly situated employee is an employee who is "directly comparable . . . in all material respects," *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002), including having committed the same infractions. *Radue*, 219 F.3d at 617 ("[P]laintiff must show he is similarly situated with respect to performance, qualifications, and conduct."). Naik is unable to show that non-Indian and/or under-40 employees who committed the same infractions were treated differently. In fact, BIPI routinely fired PSRs who falsified call records, regardless of their national origin and/or age, and no evidence was presented as to any PSR who was retained after falsifying records. Specifically, BIPI fired two PSRs in the Chicago region for

8

falsifying call records during 2003-2005, and two other employees resigned after being confronted with questionable call records.

In support of his national origin discrimination and ADEA claims, Naik contends that five of his then co-workers were similarly situated non-Indian, younger PSRs, and that they received better treatment than him because they were not subject to badgering about their national origin or age and they were not fired. However, Naik fails to demonstrate that any of his co-workers had engaged in the same conduct which led to the adverse employment action in this case, specifically that they had falsified call records, failing to show that they were similarly situated. Further, Naik offers no proof for his claim of unequal treatment, and, in fact, Naik admits that Lundsten was hard on every member of the team. The contention by Naik that his then co-workers were similarly situated and were treated more favorably is conclusory, without proof, and self-serving, and, therefore, is insufficient to establish the fourth element of Naik's *prima facie* case. *See Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 615 (7th Cir. 2001) ("[U]ncorroborated generalities are insufficient to support a Title VII claim.").

With regard to the ADEA claim, Naik contends he need only identify a younger person, not in the protected class, who was hired to replace him, according to the test set out in *La Montagne v. Am. Convenience Prods.*, 750 F.2d 1405 (7th Cir. 1984). The Seventh Circuit has stated that the "substantially similar" fourth element can alternatively be satisfied by showing that the fired employee needed to be replaced, i.e., that the employment position still existed. *Peirick*, 510 F.3d at FN2. In this case, although a younger person was hired to replace Naik and this would conceivably satisfy the fourth element, it is unclear if this is the approach the Seventh Circuit would use. However, even if this were the approach taken, Naik's claim still fails

9

because the second prong of his *prima facie* case is not met, and, as will be addressed later, Naik fails to show that BIPI's non-discriminatory reason for the adverse employment action was pretext.

> **2. Naik fails to show that BIPI's nondiscriminatory reason for the adverse employment action was pretextual.**

If, *arguendo*, Naik is found to have met the burden of establishing a *prima facie* case, his claim still fails because he fails to show that BIPI's nondiscriminatory reason for the adverse employment action was pretextual.

The Seventh Circuit recently held that:

> [T]he question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground for the employer's action rather than being a pretext for a decision based on some other, undisclosed ground.

*Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006). "A pretext . . . is a deliberate false-hood." *Id.* at 419. Naik fails to meet his burden of showing that BIPI's belief that Naik falsified his call log was not the true reason for the termination of his employment.

After discovering the discrepancies in Naik's call log, Lundsten conducted a thorough and reasonable investigation into the matter. Lundsten called the physicians' offices to confirm his suspicions and confronted Naik with the confirmed face-to-face discrepancies. Naik offered no evidence or explanation to refute these accusations. Although Naik claims that the entire investigation was pretext, he offers no proof other than conclusory allegations. Naik also claims that a proper investigation into the discrepancies would have included contacting the physicians themselves, instead of the various office personnel that were actually contacted. While Naik may have preferred a different investigation, the question of whether a proffered reason is

pretext does not rely on whether the actions were correct, but whether it was the true ground for the adverse action.

Likewise, Naik fails to establish pretext by his evidence relating to the conversation with Lundsten regarding his past work experience in India, the birthday card, and Lundsten's comments about his 30 years of experience. As a preliminary matter, Lundsten was not the primary decision maker with respect to the termination of Naik's employment position. The ultimate decision was left to Somers and Englram, and none of the alleged derogatory conduct was attributed to either of them. *See Rozskowiak v. Village of Arlington* Heights, 415 F.3d 608, 612 (7th Cir. 2005) ("Derogatory statements made by someone who is not involved in making the employment decision at issue are not evidence that the decision was discriminatory."). However, even if Lundsten contributed to the employment decision, the relevant conduct is insufficient to support a finding of pretext.

First, Naik's claim that, six months before he was fired, Lundsten questioned him extensively about his past experience in India is insufficient to establish pretext for national origin discrimination. Lundsten admits that this conversation took place, but that he was attempting to understand the difference between the pharmaceutical sales industries in the United States and India, to help explain why Naik was having performance difficulties. Under the circumstances, Lundsten's questions cannot objectively be viewed as indicating an anti-Indian discriminatory motive.

In addition, Naik received the birthday card from Lundsten approximately one year prior to the termination of his employment and is insufficient to prove a discriminatory motive for the employment decision. *Rozskowiak*, 415 F.3d at 612 (stating that remarks must be made around

pretext does not rely on whether the actions were correct, but whether it was the true ground for the adverse action.

Likewise, Naik fails to establish pretext by his evidence relating to the conversation with Lundsten regarding his past work experience in India, the birthday card, and Lundsten's comments about his 30 years of experience. As a preliminary matter, Lundsten was not the primary decision maker with respect to the termination of Naik's employment position. The ultimate decision was left to Somers and Englram, and none of the alleged derogatory conduct was attributed to either of them. *See Rozskowiak v. Village of Arlington* Heights, 415 F.3d 608, 612 (7th Cir. 2005) ("Derogatory statements made by someone who is not involved in making the employment decision at issue are not evidence that the decision was discriminatory."). However, even if Lundsten contributed to the employment decision, the relevant conduct is insufficient to support a finding of pretext.

First, Naik's claim that, six months before he was fired, Lundsten questioned him extensively about his past experience in India is insufficient to establish pretext for national origin discrimination. Lundsten admits that this conversation took place, but that he was attempting to understand the difference between the pharmaceutical sales industries in the United States and India, to help explain why Naik was having performance difficulties. Under the circumstances, Lundsten's questions cannot objectively be viewed as indicating an anti-Indian discriminatory motive.

In addition, Naik received the birthday card from Lundsten approximately one year prior to the termination of his employment and is insufficient to prove a discriminatory motive for the employment decision. *Rozskowiak*, 415 F.3d at 612 (stating that remarks must be made around

pretext does not rely on whether the actions were correct, but whether it was the true ground for the adverse action.

Likewise, Naik fails to establish pretext by his evidence relating to the conversation with Lundsten regarding his past work experience in India, the birthday card, and Lundsten's comments about his 30 years of experience. As a preliminary matter, Lundsten was not the primary decision maker with respect to the termination of Naik's employment position. The ultimate decision was left to Somers and Englram, and none of the alleged derogatory conduct was attributed to either of them. *See Rozskowiak v. Village of Arlington* Heights, 415 F.3d 608, 612 (7th Cir. 2005) ("Derogatory statements made by someone who is not involved in making the employment decision at issue are not evidence that the decision was discriminatory."). However, even if Lundsten contributed to the employment decision, the relevant conduct is insufficient to support a finding of pretext.

First, Naik's claim that, six months before he was fired, Lundsten questioned him extensively about his past experience in India is insufficient to establish pretext for national origin discrimination. Lundsten admits that this conversation took place, but that he was attempting to understand the difference between the pharmaceutical sales industries in the United States and India, to help explain why Naik was having performance difficulties. Under the circumstances, Lundsten's questions cannot objectively be viewed as indicating an anti-Indian discriminatory motive.

In addition, Naik received the birthday card from Lundsten approximately one year prior to the termination of his employment and is insufficient to prove a discriminatory motive for the employment decision. *Rozskowiak*, 415 F.3d at 612 (stating that remarks must be made around

the time of the adverse employment decision to provide a possible inference of discrimination). Further, the birthday card does not reflect an ageist attitude, but rather "common humor that could be expressed in almost any setting." *Steinhauer v. DeGolier*, 359 F.3d 481, 487 (7th Cir. 2004) (finding that "inane" office jokes were not sufficient evidence of anti-male bias).

Further, according to Naik, "everyone" on the Schaumburg team was stressed because Lundsten was hard on every member and critical of each PSR's performance. This cuts against Naik's argument that Lundsten was hard on him because of a discriminatory motive, as referenced by the comments regarding Naik's 30 years of experience, and shows that Lunsten was likewise hard on all employees. *See Steinahuer*, 359 F.3d at 486 (finding no reasonable inference of discrimination when the manager criticized male and female employees alike).

Finally, Lunsten himself hired Naik less than two years before he was fired, while Naik was both over 40 and Indian. Under such a circumstance it would be unreasonable to infer that Lunsten, or BIPI, terminated Naik's employment because of his age and/or national origin.

Accordingly, Naik cannot establish that BIPI's nondiscriminatory reason for the adverse employment action was pretextual.

## CONCLUSION

For the reasons set forth above, Defendant BIPI's motion for summary judgment [# 64] is granted. Judgment is hereby entered in favor of BIPI on all counts of the complaint. Naik's motions to strike [## 74, 80] are denied as moot. This is a final and appealable order.

_____
Wayne R. Andersen
United States District Judge

Dated: June 9, 2009