

# In the
# United States Court of Appeals
### For the Seventh Circuit

No. 09-2960

PRAKASH NAIK,

                                    *Plaintiff-Appellant*,

                    *v.*

BOEHRINGER INGELHEIM
PHARMACEUTICALS, INCORPORATED,

                                    *Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-03500—**Wayne R. Andersen**, *Judge*.

ARGUED SEPTEMBER 16, 2010—DECIDED NOVEMBER 22, 2010

Before CUDAHY, ROVNER, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*. Prakash Naik,[1] who had over thirty years of experience in the pharmaceutical sales business, was fired by his employer, Boehringer Ingelheim

---

[1] Naik was born in India in 1949. He is now a naturalized United States citizen.

Pharmaceuticals, Inc. (BIPI), allegedly for falsifying his call records. Naik, believing he was fired instead because of his age and national origin (Indian), filed suit against BIPI, claiming violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The district judge, finding that Naik failed to establish a prima facie employment discrimination case or prove that his termination was pretextual, granted BIPI's motion for summary judgment and denied Naik's subsequent motion for reconsideration. Naik now appeals.

In January 2004, after eight months of contract work, BIPI hired Naik as a professional sales representative for its Schaumburg territory in the Rockford, Illinois, district. The district is part of the company's Chicago region. Naik was 53 years old at the time he was hired, and he continued to report to the same supervisor, Brett Lundsten, who watched over his work as a contract employee. As a BIPI sales representative, Naik's main duty was to sell its products and increase sales. This was achieved by calling on doctors and medical professionals and urging them to prescribe BIPI products. At oral argument, Naik's counsel confirmed that many of the doctors Naik dealt with were of Indian descent.

According to Naik, Lundsten was hard on everybody on the Schaumburg team. Naik complained to both Bill Somers, the regional manger, and Bee Smith, the regional operations coordinator, about the difficulty of working under Lundsten and about comments Naik

No. 09-2960 3

found inappropriate in regards to his age and nationality. Specifically, Naik complained that Lundsten frequently referred to Naik's thirty years of experience as a pharmaceutical sales representative and once gave Naik a birthday card with the inscription, "You're How Old?!" on the inside. Naik also complained about Lundsten's inquiry into his experience as a sales representative in India. Naik was the only member of Lundsten's team who was born in India.

At a sales meeting in early 2005, Somers informed all district managers that the Chicago region was underperforming and instructed them to review their territories and identify the cause of the poor performance. Lundsten found that, within the Rockford district, the Schaumburg territory was not meeting its goals. He began reviewing each employee's call report activity. During the review, Lundsten found abnormal entries in Naik's daily call reporting, including sales numbers that did not reflect an increase of reported sales calls, late starts, and irregular synchronization times (Naik had apparently synchronized his computer with BIPI's network at times when he should have been in the field). Lundsten also found that Naik reported face-to-face calls with physicians on days that those physicians did not appear to be available.

Lundsten showed his findings to Somers as well as Glen Englram, the human resources business partner for the region. Englram told Lundsten to contact the physicians' offices where he suspected falsified calls to verify whether the physician was in the office on the

dates in question. Lundsten contacted several offices and spoke with an administrative assistant, receptionist, office manager, or nurse to confirm his findings. His calls produced a list of six instances when Naik reported a face-to-face call with a physician on a day when the physician was not in the office. Lundsten then reported his finding to Somers and Englram, who decided to set up a meeting with Naik to discuss the reporting anomalies.

On August 2, 2005, Lundsten, Somers, and Englram met with Naik to discuss the call discrepancies. Naik said he could not remember the calls in question but that he might have more information in his personal records. Lundsten requested that Naik supply any additional information by the end of the next day. At Naik's request, Lundsten provided Naik with a list of five doctors and dates in question. On August 4, Naik told Lundsten that he had no further information.

The next day, Lundsten, Somers, and Englram determined that Naik falsified the calls in violation of BIPI policy, and Somers and Englram decided to terminate Naik's employment. On August 5, all three met with Naik to inform him of their decision. At the meeting, Naik still could not explain the discrepancies in the call log. A few months later, BIPI hired a 36-year-old, non-Indian man to replace Naik.

In addition to Naik, BIPI fired two other sales representatives in the Chicago region for falsifying call records between 2003 and 2005. Two more representatives resigned after being accused of falsifying their call

No. 09-2960                                                      5

records. BIPI has no record of any sales representative who falsified call records and was not either terminated or allowed to resign after being threatened with termination.

In the district court, BIPI sought summary judgment, arguing that Naik failed to prove a prima facie case of discrimination. The district judge agreed, finding that Naik had not met BIPI's legitimate expectations, did not have any evidence of similarly situated employees who were treated more favorably, and failed to show he was fired for a pretextual reason. For the same reasons, the district judge also denied Naik's motion for reconsideration.

We review the district court's grant of summary judgment *de novo*. *Nemsky v. ConocoPhillps Co.*, 574 F.3d 859, 864 (7th Cir. 2009). Summary judgment is appropriate where the admissible evidence shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008) (internal quotation marks omitted).

To survive a summary judgment motion on age and national origin discrimination claims under the ADEA and Title VII, a plaintiff must present either direct or indirect evidence of discriminatory intent. *La Montagne v. American Convenience Products, Inc.* 750 F.2d 1405, 1409 (7th Cir. 1984). Naik attempts to prove discriminatory

intent through the indirect method, which involves establishing a prima facie case under the familiar *McDonnell Douglas* formula. *See Egonmwan v. Cook County Sheriff's Department*, 602 F.3d 845, 850 (7th Cir. 2010). Accordingly, he must show that: (1) he is a member of the protected class; (2) he was performing well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees not in his protected class were treated more favorably. *Hildebrandt v. Illinois Department of Natural Resources*, 347 F.3d 1014, 1030 (7th Cir. 2003). If he establishes all four elements, the burden shifts to BIPI to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If BIPI meets its burden, Naik must demonstrate that the reasons offered were pretextual. *Egonmwan*, 602 F.3d at 850.

Only the second and fourth elements are at issue here. Regarding the second element, the district judge correctly found that Naik failed to meet BIPI's legitimate expectations. Naik argues that he was not able to prove whether he met BIPI's expectations because BIPI did not produce the average daily call logs of other BIPI employees.[2] This argument misses the point. Naik did not fail to meet BIPI's expectations simply because he made fewer calls than other employees. He failed to meet BIPI's expectations because he falsified his call records.

---

[2] Naik's request for these documents was denied by the magistrate judge. Naik failed to object to the judge's order and thus has waived his right to challenge the ruling now.

Case: 1:07-cv-03500 Document #: 114 Filed: 01/14/11 Page 7 of 9 PageID #:1212
Case: 09-2960   Document: 00711470767   Filed: 01/14/2011   Pages: 9

Naik is correct that Lundsten began looking into Naik's call logs because of his average daily calls, but that was not the reason he was terminated. Naik was terminated because of the discrepancies Lundsten found in Naik's call logs and Naik's inability to provide what he considered to be an acceptable explanation.

Naik's response is that he had met BIPI's legitimate expectations in the past. This, however, is irrelevant. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004). Naik must show that he was meeting BIPI's expectations at the time of his termination, which includes evidence that he did not violate BIPI's policies. After Lundsten, Somers, and Englram approached Naik about the discrepancies in his call log, they gave him time to rebut the accusation. Naik, however, replied only that he had no further information. His failure to provide any evidence or defense in response to Lundsten's findings is a failure to establish the second element of his prima facie case.

Furthermore, the district judge also correctly found that Naik had not established the fourth element, which required him to show that similarly situated employees not in his protected class were treated more favorably. Similarly situated employees must be "directly comparable to the plaintiff in all material respects, which includes showing that the coworkers engaged in comparable rule or policy violations." *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009). Here, the evidence shows that every employee that BIPI found to have falsified call logs was either ter-

minated or allowed to resign. There is no evidence that any employee who violated the BIPI policy remained on the job.

Naik argues that we should apply the more relaxed standard articulated in *Pantoja v. American NTN Bearing Manufacturing Corp.*, 495 F.3d 840 (7th Cir. 2007), to his claims. In *Pantoja*, we held that the plaintiff only had to show that his "employer sought someone to perform the same work after he left." *Id*. at 846 (internal citations omitted). Naik left out, however, the next paragraph of the opinion, which requires a plaintiff to prove the second element of the prima facie case in order to benefit from this more flexible standard for the fourth element. "Once an employee can show (in the sense of raising an issue of material fact at the summary judgment stage) that he is meeting his employer's legitimate expectations (the second element), then the fact that the employer needs to find another person to perform that job after the employee is gone raises the same inference of discrimination that the continuation of a search does in the hiring situation." *Id*. Naik's claim would only work if he had met BIPI's legitimate expectations. But on that score, he came up short. His claims, therefore fall outside the more relaxed requirement we mentioned in *Pantoja*. Therefore, Naik failed to establish the fourth element of his prima facie case.

Even if Naik had met his initial burden, the district judge correctly held that Naik's claims still fail because he cannot show that BIPI's nondiscriminatory reason

No. 09-2960                                                    9

for his termination was pretextual. The only question we must ask is whether BIPI had a legitimate, nondiscriminatory reason for firing Naik, not whether it made the correct decision. *See Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005) ("[I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie."). "If it is the true ground and not a pretext, the case is over." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006).

Here, BIPI put forth a legitimate, nondiscriminatory reason for terminating Naik. BIPI believed, whether wrong or right, that Naik falsified his call reports and Naik did nothing to really dispute the accusation. Thus, the district judge properly granted BIPI's motion for summary judgment. We also conclude that the district judge did not abuse his discretion in denying Naik's Rule 59(e) motion seeking reconsideration.

For these reasons, the judgment of the district court is AFFIRMED.